IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOLLIE ADAMS, et al.,** | : | Civil No. 1:19-CV-336 |
| Plaintiff | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Carlson) |
| **TEAMSTERS LOCAL UNION 429,** et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

In some ways, this lawsuit, which comes before us for consideration of a dispositive motion filed on behalf of the Pennsylvania Attorney General and the members of the Pennsylvania Labor Relations Board, seems to be a case in search of a current controversy. The element of legal controversy which normally accompanies a lawsuit is reduced significantly in this case due to a simple fact: The legal issue which lies at the heart of this litigation was conclusively resolved by the United States Supreme Court some eight months *before* the plaintiff filed this case.

On June 27, 2018, the United States Supreme Court decided Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448, 2459-60, 201 L. Ed. 2d 924 (2018), holding that a state law under which "public employees are forced to subsidize a union, even if they choose not to join and strongly object to the

positions the union takes in collective bargaining and related activities, . . . violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." Id. In reaching this result, the Court expressly overruled its prior decision in Abood v. Detroit Bd. of Ed., 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), which had for many years sustained the constitutionality of such state statutes.[1] Thus Janus constituted a sea change in the law as it related to the question of the constitutionality of laws permitting compulsory public employee union fee deductions.

At the time of the Supreme Court's decision in Janus, the plaintiffs were employed by Lebanon County in various capacities. (Doc. 36, ¶¶ 19-64). During their employment with the county, each of the plaintiffs had at one time or another

---

[1] As one court recently explained:

> In Abood, the Court confronted a Michigan statute that allowed unions representing local-government employees to utilize "agency-shop" clauses in collective-bargaining agreements. Id. at 211, 97 S. Ct. 1782. These clauses required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues. Id. at 212, 97 S. Ct. 1782. . . . . The Court held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities. Id. at 225, 97 S. Ct. 1782.

Diamond v. Pennsylvania State Educ. Ass'n, No. 3:18-CV-128, 2019 WL 2929875, at *1–2 (W.D. Pa. July 8, 2019).

joined Teamsters Local 429, the union representing county workers. As county employees, the plaintiffs were also subject to the provisions of the Pennsylvania Public Employee Relations Act ("PERA"), 43 Pa. C.S. §§ 1101.101-2301.

At the time of the Supreme Court's decision in <u>Janus</u>, consistent with prior case law, Pennsylvania had, by statute, provided for some automatic deductions from public employee pay checks to subsidize union activities. Specifically, PERA provided that:

> It shall be lawful for public employes [sic] to organize, form, join or assist in employe [sic] organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes [sic] shall also have the right to refrain from any or all such activities, *except as may be required pursuant to a maintenance of membership provision of a collective bargaining agreement.*

43 Pa. C.S. § 1101.401 (emphasis added). Pennsylvania law further provided that the term " '[m]aintenance of membership' means that all employes [sic] who have joined an employe [sic] organization . . . *must remain members for the duration of a collective bargaining agreement* . . . with the proviso that any such employe [sic] . . . may resign from such employe [sic] organization during a period of fifteen days prior to the expiration of any such agreement." 43 Pa. C.S. § 1101.301(18) (emphasis added). This provision of state law, in turn, subjected local government employees to dues, deductions, and maintenance provisions since, by statute, such deductions were deemed "proper subjects of bargaining with the proviso that as to the latter, the

3

payment of dues and assessments while members, may be the only requisite employment condition." 43 Pa. C.S. § 1101.705.

In accordance with the then-existing state law, Lebanon County and Defendant Teamsters had entered into a collective bargaining agreement ("CBA" or "Agreement"), effective from January 1, 2016 through December 31, 2019. Article 3 of the Agreement stated in pertinent part as follows:

> Section 1. Each employee who, on the effective date of this Agreement, is a member of the Union and each employee who becomes a member after that date shall, as a condition of employment, maintain his/her membership in the Union. An employee may, however, resign from the Union within fifteen (15) days prior to the expiration of this Agreement without penalty by serving written notice to Teamsters Local Union No. 429, 1055 Spring Street, Wyomissing, PA 19610, and to the Commissioners Office, Lebanon County Court House, Room 207, 400 South 8th Street, Lebanon, PA 17042.

(Id. ¶¶ 17-18).

Article 4, Section 1 of the Collective Bargaining Agreement, in turn, contained provisions regarding dues deductions which stated that:

> Section 1. Union Dues. The County agrees to deduct the Union membership initiation fees, assessment and once each month, either dues from the pay of those employees who individually request in wiring that such deduction be made or fair share. The amount to be deducted shall be certified to the County by the Union, and the aggregate deductions of all employees shall be remitted together with an itemized statement to the Union by the 10th of the succeeding month, after such deductions are made. This authorization shall be irrevocable during the term of this Agreement.

(Id. ¶ 18).

4

Taken together, these provisions of state law and the collective bargaining agreement between Lebanon County and the union created an obligation for the plaintiffs to make dues payments, something which they assert they were opposed to doing.

On June 27, 2018, the Supreme Court's decision in <u>Janus</u> struck down the continued constitutionality of laws like the Pennsylvania statute permitting compulsory public employee union fee deductions. Shortly after the <u>Janus</u> decision, the plaintiffs wrote the union requesting to resign from this labor organization. (<u>Id.</u> ¶¶ 19-64). After some exchanges between the plaintiffs and the union, these requests were granted and the unions dues deductions for the plaintiffs ceased. Moreover, by May 2019, the union had refunded those dues deductions which had taken place between the time of the plaintiffs' resignation requests and the processing of those requests. (<u>Id.</u>)

Notwithstanding these facts, on February 27, 2019, the plaintiffs filed this lawsuit. (Doc. 1). In their complaint, the plaintiffs sued both the county and the local union, the entities which were parties to the collective bargaining agreement at issue in this case. However, the plaintiffs' complaint also named four Commonwealth officials as defendants, the Pennsylvania Attorney General, Josh Shapiro, and the members of the Pennsylvania Labor Relations Board, James Darby, Albert Mezzoroba, and Robert Shoop, suing these officials in their official capacity only. (Doc. 1, Introduction). According to the plaintiffs, even though these officials were

not parties to the collective bargaining agreement, they were nonetheless defendants in this litigation because Attorney General Shapiro is "charged with the enforcement of Commonwealth laws, including PERA, which permits the limitation of the rights of government employees to resign from the union and stop union dues from being withheld from their paychecks, 43 P.S. § 1101.301(18); 1101.401; 1101.705; and which requires Teamsters to be the 'exclusive Representative' of Plaintiffs, whether they are union members or not. 43 P.S. § 1101.606." (Doc. 1 ¶ 12). The members of the Pennsylvania Labor Relations Board, who likewise were not parties to this CBA, were sued by the plaintiffs in their official capacity because they were "charged, under PERA, with certifying employee representatives for collective bargaining purposes, 43 P.S. § 1101.602, determining the appropriateness of the bargaining unit, 43 P.S. § 1101.604, and limited to certifying only one employee representative per bargaining unit, 43 P.S. § 1101.606." (Id. ¶ 13). The plaintiffs then alleged that the conduct of union officials and the county defendants violated their constitutional rights under the First and Fourteenth Amendments. (Id., *passim*). On the basis of these allegations, the plaintiffs sought injunctive and declaratory relief, along with damages and attorneys' fees. (Id., Prayer for relief).

   On May 20, 2019, the Commonwealth defendants filed a motion to dismiss this complaint, (Doc. 26), which the Court then converted to a motion for summary

judgment. (Doc. 28).[2] In this motion, the Commonwealth defendants argued that the plaintiffs' requests for prospective relief are now moot given that they are no longer members of the union and no longer have union fees deducted from their wages. The Commonwealth defendants further asserted that to the extent that the plaintiffs sought damages or other retrospective relief from the Commonwealth or from Commonwealth officials acting in their official capacities, such claims are barred by the Eleventh Amendment to the United States Constitution.

This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that this motion to dismiss which has been deemed a motion for summary judgment, (Doc. 20), be granted.

## II.   Discussion

### A. Summary Judgment—Standard of Review

The Commonwealth defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to

---

[2] The county and union defendants have also moved for summary judgment on these claims brought by the plaintiffs. The plaintiffs, in turn, have filed a motion for partial summary judgment, which appears to relate primarily to the union. Because these motions entail somewhat different legal claims, and arise in a distinct factual context, we will address these motions in separate Reports and Recommendations.

dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary

judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of

fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is against this analytical prism that we assess the summary judgment motion submitted by the Commonwealth defendants.

## B. The Plaintiffs' Requests for Injunctive Relief Against the Commonwealth Defendants are Now Moot.

At the outset, to the extent that the plaintiffs seek prospective injunctive or declaratory relief, the short answer to that request is that the plaintiffs have withdrawn from the union, are no longer subject to dues deductions, have received dues refunds, and in light of the Supreme Court's decision in Janus, are no longer subject to the threat of future dues deductions since the Court has struck down these type of "agency shop" arrangements in which dissenting workers were nonetheless required to pay union dues. Given that this practice is no longer in effect and cannot be constitutionally reinstituted in light of the Court's decision in Janus, we agree with those courts who have considered prospective injunctive and declaratory relief requests like those made here and found those requests to be moot.

The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). There is a constitutional dimension to the mootness doctrine.

> Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L.Ed.2d 400 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the

> defendant and likely to be redressed by a favorable judicial decision." Id. (citing Allen v. Wright, 468 U.S. 737, 750–751, 104 S. Ct. 3315, 82 L.Ed.2d 556 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471–473, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L.Ed. 617 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477–478. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477).

Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir. 2009) (dismissing habeas petition as moot).

In considering the application of the mootness doctrine to this case, we most assuredly do not write upon a blank slate. Quite the contrary, in the wake of Janus' sea change in this law regarding the constitutionality of "agency shop" statutes, numerous courts have been confronted with the precise scenario presented here: A Janus-based lawsuit by an employee who was formerly subjected to compulsory dues deductions, seeking injunctive relief against officials who had abandoned this "agency shop" practice in light of the Supreme Court's ruling. Almost without exception, on these facts, courts have concluded that plaintiffs' requests for

prospective relief are now moot given the cessation of this practice that was compelled by the Supreme Court's decision in Janus.[3]

---

[3] See, e.g., Oliver v. Serv. Employees Int'l Union Local 668, No. CV 19-891, 2019 WL 5964778, at *7 (E.D. Pa. Nov. 12, 2019); LaSpina v. SEIU Pennsylvania State Council, No. CV 3:18-2018, 2019 WL 4750423, at *9 (M.D. Pa. Sept. 30, 2019); Mayer v. Wallingford-Swarthmore Sch. Dist., No. CV 18-4146, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019); Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 383 (W.D. Pa. July 8, 2019) (citing Hartnett v. Pa. State Educ. Ass'n, 390 F. Supp. 3d 592 (M.D. Pa. May 17, 2019) (finding comparable claims for declaratory and injunctive relief moot post-Janus because the "[p]laintiffs face no realistic possibility that they will be subject to the unlawful collection of 'fair share' fees")); Cook v. Brown, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019) (finding a request for injunctive relief post-Janus moot because the union had already stopped collecting fair-share fees and thus there was "no live controversy . . . necessitating injunctive relief"); Lamberty v. Conn. State Police Union, No. 3:15-cv-378, 2018 WL 5115559, at *9 (D. Conn. Oct. 19, 2018) (explaining that Janus mooted a challenge to the constitutionality of agency fees because "there is nothing for [the court] to order [the d]efendants to do now"); Yohn v. Cal. Teachers Ass'n, Case No. SACV 17-202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) (granting the union's motion to dismiss on mootness grounds after the union complied with Janus); Danielson v. Inslee, 345 F. Supp. 3d 1336, 1339-40 (W.D. Wash. 2018) (finding that Janus mooted a controversy when the State of Washington stopped collecting agency fees post-Janus); Smith v. Bieker, Case No. 18-cv-05472-VC, 2019 WL 2476679, at *1 (N.D. Cal. June 13, 2019) (finding similar claims moot because the State did not plan to enforce the unconstitutional statute in light of Janus). See also Mayer v. Wallingford-Swarthmore Sch. Dist., No. CV 18-4146, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019); Molina v. Pennsylvania Soc. Serv. Union, 392 F. Supp. 3d 469, 471 (M.D. Pa. 2019); Hamidi v. Serv. Employees Int'l Union Local 1000, 386 F. Supp. 3d 1289, 1295 (E.D. Cal. 2019); Akers v. Maryland State Educ. Ass'n, 376 F. Supp. 3d 563, 572 (D. Md. 2019); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980 (N.D. Ohio 2019).

For their part, the plaintiffs attempt to resist this rising tide of case law by arguing the voluntary cessation doctrine, which holds that voluntary abandonment of an unlawful practice does not automatically render a dispute moot. The difficulty with this assertion in the instant case is twofold: First, virtually every court which has considered this argument following the Supreme Court's decision in Janus has rejected it.[4] Second, this argument fails to take into account the unique factual context of this case. This is not a situation in which the voluntary cessation doctrine applies because a litigant has made a brief and temporary tactical legal retreat on an uncertain legal landscape. Quite the contrary, the United States Supreme Court has now clearly and definitively changed that legal landscape and the actions of the defendants simply reflect compliance with the Court's unmistakable mandate. As one court has aptly observed when discounting a similar voluntary cessation argument:

> Janus . . . represents a significant legal shift because it explicitly overruled Abood and held that the collection of fair-share fees was unconstitutional. "The law of the land thus has changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees." Complying with a Supreme Court decision [therefore] cannot be considered "voluntary cessation."

Diamond v. Pennsylvania State Educ. Ass'n, No. 3:18-CV-128, 2019 WL 2929875, at *16 (W.D. Pa. July 8, 2019) (citations omitted).

---

[4] See cases cited in footnote 3 supra.

14

We agree. Finding that this paradigm shift in the law, and the parties' compliance with their newly defined legal obligations eliminates the need for prospective relief, and further concluding that complying with a Supreme Court decision cannot be characterized as voluntary cessation, we submit that these requests for prospective relief from the Commonwealth defendants are now moot and should be dismissed.

Indeed, in this case the commonwealth defendants' ties to any live case or controversy are particularly tenuous since neither Attorney General Shapiro nor the members of the Pennsylvania Labor relations Board are parties to the collective bargaining agreement. Instead, the only tie these officials have to the matters set forth in the complaint is a fleeting and evanescent allegation that they have some role in the enforcement of Pennsylvania's laws, including Pennsylvania labor laws. Yet, at least one federal court has found similar allegations to be legally insufficient to hold these state officials legally responsible for post-<u>Janus</u> union collective bargaining activities and disputes. In <u>Diamond v. Pennsylvania State Educ. Ass'n</u>, 399 F. Supp. 3d 361, 380–81 (W.D. Pa. 2019), the court rejected an argument similar to the one advanced in this case, that the general law enforcement duties of the Attorney General and members of the Pennsylvania Labor Relations Board were sufficient to hold them legally accountable civil rights claims made in the wake of the <u>Janus</u> decision, holding instead that:

15

> [I]n order for a state officer to have "some connection with the enforcement of the act," there must be "realistic potential" that the officer's "general power to enforce the laws of the state would have been applied" against the plaintiffs. See Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988). Specifically, "[a] plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce, the statute against the plaintiffs." 1st Westco Corp. v. Sch. Dist. of Phila., 6 F.3d 108, 113 (3d Cir. 1993). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." Id.

Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 380–81 (W.D. Pa. 2019). In the instant case, beyond a general assertion that these state officials play some role in the enforcement of labor laws, the plaintiffs' complaint makes no allegations that the Commonwealth defendants have "either enforced, or threatened to enforce, the statute against the plaintiffs." Id. Nor can the plaintiffs credibly make a claim that they face some imminent enforcement activity since the provisions of the PERA which troubled them are now nullities in light of the Supreme Court's decision in Janus. Accordingly, since "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law," these officials simply are not proper defendants in this lawsuit and should be dismissed.

### C. The Eleventh Amendment Bars The Plaintiffs' Damages Claims Against State Agencies or State Officials Acting in Their Official Capacity.

Further, to the extent that the plaintiffs are seeking damages or some other form of retroactive financial relief from the state, state agencies, or state officials acting in their official capacities, this complaint encounters a second, insurmountable legal obstacle. Such claims are barred both by the Eleventh Amendment to the United States Constitution and by case law construing the reach of the federal civil rights statute, 42 U.S.C. § 1983. Simply put, dismissal of the claims lodged against these state officials in their official capacities is warranted because this complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.

First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . ." U.S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Pursuant to the Eleventh Amendment, states, state

agencies, and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. In this case, it is apparent that Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against these state agencies or officials, and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically invoked its Eleventh Amendment immunity under 42 Pa.C.S. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, see 42 Pa.C.S. § 8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S. § 8521(b).

These principles control here and are fatal to any damages claims that the plaintiffs wish to pursue against these state agencies and officials, who are sued only in their official capacities. At the outset, it is well-settled that the Pennsylvania Labor Relations Board is an arm of the state that is entitled to Eleventh Amendment sovereign immunity. Ponton v. AFSCME, 395 F. App'x 867, 872 (3d Cir. 2010).

Likewise, the Pennsylvania Attorney General's office is also encompassed by the protection from suit provided for by the Eleventh Amendment to the United States Constitution. Friends & Residents of St. Thomas Twp., Inc. v. St. Thomas Dev., Inc., 176 F. App'x 219, 227 (3d Cir. 2006). Therefore, these state agencies and officials are cloaked in this constitutional immunity. In addition, courts that have considered post-Janus civil rights claims for damages lodged against state agencies and officials have consistently found that the Eleventh Amendment bars such claims. See, e.g, Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 377 (W.D. Pa. 2019); Belgau v. Inslee, 359 F. Supp. 3d 1000, 1011 (W.D. Wash. 2019). Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983—the principal federal civil rights statute relied upon by the plaintiffs in this case. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

These basic legal tenets apply here and compel dismissal of the plaintiffs' damages claims against these state official defendants. In sum, as to these state officials, federal civil rights claims for damages are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore, since these state officials cannot be

sued in this fashion for damages in federal court, these claims should also be dismissed.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Commonwealth defendants' motion to dismiss which has been deemed a motion for summary judgment, (Doc. 26), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of December 2019.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge