**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HOLLIE ADAMS, et al.,** | : | **Civil No. 1:19-CV-336** |
| | : | |
| **Plaintiffs** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **TEAMSTERS LOCAL UNION 429,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This lawsuit, which comes before us for consideration of cross motions for summary judgment, seems in many ways to be a case in search of a current controversy. The element of legal controversy which normally accompanies a lawsuit is reduced significantly in this case due to a simple fact: The legal issue which lies at the heart of this litigation was conclusively resolved by the United States Supreme Court some eight months *before* the plaintiff filed this case.

On June 27, 2018, the United States Supreme Court decided <u>Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31</u>, 138 S. Ct. 2448, 2459-60, 201 L. Ed. 2d 924 (2018), holding that a state law under which "public employees are forced to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities, . . . violates

1

the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." Id. In reaching this result, the Court expressly overruled its prior decision in Abood v. Detroit Bd. of Ed., 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), which had for many years sustained the constitutionality of such state statutes.[1] Thus Janus constituted a sea change in the law as it related to the question of the constitutionality of laws permitting compulsory public employee union fee deductions.

At the time of the Supreme Court's decision in Janus, the plaintiffs were employed by Lebanon County in various capacities. (Doc. 36 ¶¶ 19-64). During their employment with the county, each of the plaintiffs had at one time or another joined Teamsters Local 429, the union representing county workers. For instance, on April

---

[1]  As one court recently explained:

> In Abood, the Court confronted a Michigan statute that allowed unions representing local-government employees to utilize "agency-shop" clauses in collective-bargaining agreements. Id. at 211, 97 S. Ct. 1782. These clauses required every employee represented by a union, even those who declined to become union members for political or religious reasons, to pay union dues. Id. at 212, 97 S. Ct. 1782. . . . . The Court held that the charges were constitutional to the extent they were used to finance the union's collective-bargaining, contract-administration, and grievance activities. Id. at 225, 97 S. Ct. 1782.

Diamond v. Pennsylvania State Educ. Ass'n, No. 3:18-CV-128, 2019 WL 2929875, at *1–2 (W.D. Pa. July 8, 2019).

14, 2003, Plaintiff Hollie Adams was hired by Lebanon County and on May 6, 2003, Adams signed a union authorization card, joining Local 429. (Id. ¶¶ 19-20). Likewise, on December 14, 2009, Plaintiff Christopher Felker was hired by Lebanon County. One month later, on January 26, 2010, Felker signed a union authorization card and joined the local union. (Id. ¶¶ 32-33). Lastly, on June 18, 2007, Plaintiff Jody Weaber was hired by Lebanon County and Weaber joined the union one month later, on July 31, 2007, when she signed a union authorization card. However, not all of the plaintiff-employees felt the need to immediately join Local 429. For example, in October of 2015, Plaintiff Karen Unger was hired by Lebanon County. Unger did not sign a union authorization card at the time she started employment with Lebanon County, opting instead to pay a fair share fee as a non-member. Unger then deferred for two years before she signed a union authorization card and joined the local union on November 7, 2017. (Id. ¶¶ 42-44).

As county employees, the plaintiffs were also subject to the provisions of the Pennsylvania Public Employee Relations Act ("PERA"), 43 Pa. C.S. §§ 1101.101-2301. At the time of the Supreme Court's decision in Janus, consistent with prior case law, Pennsylvania had, by statute, provided for some automatic deductions from public employee pay checks to subsidize union activities. Specifically, PERA provided that:

> It shall be lawful for public employes [sic] to organize, form, join or assist in employe [sic] organizations or to engage in lawful concerted

3

activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes [sic] shall also have the right to refrain from any or all such activities, *except as may be required pursuant to a maintenance of membership provision of a collective bargaining agreement.*

43 Pa. C.S. § 1101.401 (emphasis added). Pennsylvania law further provided that the term " '[m]aintenance of membership' means that all employes [sic] who have joined an employe [sic] organization . . . *must remain members for the duration of a collective bargaining agreement* . . . with the proviso that any such employe [sic] . . . may resign from such employe [sic] organization during a period of fifteen days prior to the expiration of any such agreement." 43 Pa. C.S. § 1101.301(18) (emphasis added). This provision of state law, in turn, subjected local government employees to dues, deductions, and maintenance provisions since, by statute, such deductions were deemed "proper subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments while members, may be the only requisite employment condition." 43 Pa. C.S. § 1101.705.

PERA also provides that:

Representatives selected by public employes in a unit appropriate for collective bargaining purposes shall be the exclusive representative of all the employes in such unit to bargain on wages, hours, terms and conditions of employment: Provided, That any individual employe or a group of employes shall have the right at any time to present grievances to their employer and to have them adjusted without the intervention of the bargaining representative as long as the adjustment is not inconsistent with the terms of a collective bargaining contract then in

4

effect: And, provided further, That the bargaining representative has been given an opportunity to be present at such adjustment.

43 P.S. § 1101.606.

Once a union is designated the exclusive representative of all bargaining unit employees in the bargaining unit, it negotiates wages, hours, terms, and conditions of employment for all bargaining unit employees. 43 P.S. § 1101.606. In this case, Teamsters Local 429 has been certified as the exclusive bargaining representative for the bargaining unit employees in Lebanon County, which includes Plaintiffs. As such, the defendant local is the exclusive representative of the bargaining unit, which included the plaintiffs and their co-workers, with respect to wages, hours, terms, and conditions of employment. (Id. ¶¶ 12-15).

In accordance with the then-existing state law, Lebanon County and Defendant Teamsters entered into a collective bargaining agreement ("CBA" or "Agreement"), effective from January 1, 2016 through December 31, 2019. Article 3 of the Agreement stated in pertinent part as follows:

> Section 1. Each employee who, on the effective date of this Agreement, is a member of the Union and each employee who becomes a member after that date shall, as a condition of employment, maintain his/her membership in the Union. An employee may, however, resign from the Union within fifteen (15) days prior to the expiration of this Agreement without penalty by serving written notice to Teamsters Local Union No. 429, 1055 Spring Street, Wyomissing, PA 19610, and to the Commissioners Office, Lebanon County Court House, Room 207, 400 South 8th Street, Lebanon, PA 17042.

(Id. ¶¶ 17-18).

Article 4, Section 1 of the Collective Bargaining Agreement, in turn, contained provisions regarding dues deductions which stated that:

> Section 1. Union Dues. The County agrees to deduct the Union membership initiation fees, assessment and once each month, either dues from the pay of those employees who individually request in wiring that such deduction be made or fair share. The amount to be deducted shall be certified to the County by the Union, and the aggregate deductions of all employees shall be remitted together with an itemized statement to the Union by the 10th of the succeeding month, after such deductions are made. This authorization shall be irrevocable during the term of this Agreement.

(Id. ¶ 18). Taken together, these provisions of state law and the collective bargaining agreement between Lebanon County and the union created an obligation for the plaintiffs to make dues payments, something which they assert they were opposed to doing.

On June 27, 2018, the Supreme Court's decision in Janus struck down the continued constitutionality of laws like the Pennsylvania statute permitting compulsory public employee union fee deductions. Shortly after the Janus decision, the plaintiffs wrote the union requesting to resign from this labor organization. (Id. ¶¶ 19-64). After some exchanges between the plaintiffs and the union, these requests were granted and the unions dues deductions for the plaintiffs ceased. Moreover, by May 2019, the union had refunded those dues deductions which had taken place between the time of the plaintiffs' resignation requests and the processing of those requests. (Id.)

Specifically, on July 10, 2018, Hollie Adams wrote the Local requesting to resign her membership. The local union responded to this July 10, 2018 letter on August 13, 2018, denying her request based on the terms of her dues authorization card. Adams then sent a second letter to the union on August 30, 2018, repeating her request to resign her union membership. On September 7, 2018, the Local notified Adams that under the terms of her dues authorization card, her dues deductions would cease in March of 2019, the next available date for withdrawal from dues payments. In fact, on March 5, 2019, the Local notified Lebanon County to cease dues deductions for Adams, and Adams' February 28, 2019 payroll check was the last payroll check in which union dues were withheld.

Between July 2018 and March 2019, the Local received $416.00 in dues deductions for Adams. On May 7, 2019, the Local sent a letter to Adams confirming that the Local had accepted her resignation of her membership and that dues deductions had ceased. Three days later, on May 10, 2019, the Local notified Adams that it was refunding all dues deductions received by the Local from the time she requested to resign her membership until dues deductions ceased. Adams then received a refund of  $440.96, representing the $416.00 in dues deductions received by the Local, as well as six percent statutory interest. (Id. ¶¶ 22-31).

The local union followed a similar course with respect to the other named plaintiffs. For example, on September 28, 2018, Christopher Felker wrote the Local

requesting to resign his union membership. One week later, on October 5, 2018, the Local informed Felker that it had accepted his resignation of his membership and his dues deductions would cease by November 2018. Consequently, the payroll check issued to Felker on October 25, 2018 was the last payroll check in which union dues were withheld. On May 7, 2019, the Local sent a letter to Felker confirming that the Local had accepted his resignation of membership and that dues deductions had ceased. Three days later, on May 10, 2019, the Local refunded Felker's dues deductions, along with accrued interest, from the time he has notified the union of his resignation. (Id. ¶¶ 35-41). In the same vein, on July 10, 2018, Karen Unger notified the union that she, too, wished to resign her membership. Alerted to this request in August, the union requested that Lebanon County cease dues deductions for Unger. The payroll check issued on September 13, 2018 to Unger was the last payroll check in which union dues were withheld and the last dues deductions received by the local from Lebanon County for Unger occurred on or about October 1, 2018. Between July 10, 2018 and October 2018, the local received $88.00 in dues deductions from Lebanon County for Unger. On May 10, 2019, those funds, with accrued interest, were refunded by the Local to Unger. (Id. ¶¶ 46-52).

Finally, on July 16 and August 30, 2018, Jody Weaber contacted the Local requesting to resign her union membership. While the Local initially notified Weaber in September of 2018 that union dues deductions would cease in June of

2019, the local actually instructed Lebanon County to cease dues deductions for Weaber on March 5, 2019. Thus, the payroll check issued on February 28, 2019 by Lebanon County to Weaber was the last payroll check in which union dues were withheld. Between July 2018 and March 2019, the local received $392.00 in dues deductions for Weaber. On May 10, 2019, these dues deductions, as well as six percent statutory interest, were refunded to Weaber. (Id. ¶¶ 56-64).

Notwithstanding these facts, on February 27, 2019, the plaintiffs filed this lawsuit. (Doc. 1). In their complaint, the plaintiffs sued both the county and the local union, the entities which were parties to the collective bargaining agreement at issue in this case, as well as four Commonwealth officials, the Pennsylvania Attorney General, Josh Shapiro, and the members of the Pennsylvania Labor Relations Board, James Darby, Albert Mezzoroba, and Robert Shoop. (Doc. 1, Introduction). Pursuing claims under the federal civil rights statute, 42 U.S.C. §1983, the plaintiffs' complaint contains two counts. Count I brings constitutional free speech claims based upon the Supreme Court's decision in Janus, alleging that the conduct of union officials and the county defendants violated their constitutional rights under the First and Fourteenth Amendments through compulsory dues payments. (Id. ¶¶ 36-51). Count II of the complaint then brings a separate First Amendment freedom of association and freedom of speech claim, asserting that the designation of the local union as the exclusive bargaining representative for all employees unconstitutionally

abridged the plaintiffs' free speech and association rights by in some way compelling them to associate with the union. (Id. ¶¶ 52-65). On the basis of these allegations, the plaintiffs sought injunctive and declaratory relief, along with damages and attorneys' fees. (Id., Prayer for relief).

Lebanon County and Local 429 have both moved to dismiss this complaint, (Docs. 25 and 27), motions which the Court then converted to motions for summary judgment. (Doc. 28). In these motions, the defendants argue that the plaintiffs' requests for prospective relief are now moot given that they are no longer members of the union and no longer have union fees deducted from their wages. The defendants further assert that any damages claims fail as a matter of law, and that the designation of the union as the exclusive bargaining representative for these employees does not violate the First Amendment but rather has been approved by the United States Supreme Court. The plaintiffs, in turn, have filed their own cross motion for summary judgment, arguing that they are entitled to a judgment in their favor as a matter of law on all of these constitutional claims.

These competing summary judgment motions are fully briefed and are, therefore, ripe for resolution. For the reasons set forth below, it is recommended that the defendants' motions to dismiss which have been deemed motions for summary judgment, (Docs. 25 and 27), be granted, and the plaintiffs' summary judgment motion, (Doc. 42), be denied.

## II.  Discussion

### A. Summary Judgment—Standard of Review

The parties have filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing

any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal

quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 476 (3d Cir. 2011).

Further:

"When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" <u>Transguard Ins. Co. of Am., Inc. v. Hinchey</u>, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006) (quoting <u>Marciniak v. Prudential Fin. Ins. Co. of Am.</u>, 184 Fed. App'x 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." <u>Id.</u> (citing <u>Iberia Foods Corp. v. Romeo</u>, 150 F.3d 298, 302 (3d Cir. 1998)).

<u>Pellicano v. Office of Pers. Mgmt., Ins. Operations</u>, 8 F. Supp. 3d 618, 625–26 (M.D. Pa. 2014), <u>aff'd sub nom. Pellicano v. Office of Pers. Mgmt.</u>, 714 F. App'x 162 (3d Cir. 2017).   It is against this analytical prism that we now assess these cross motions for summary judgment.

## B. <u>The Plaintiffs' Requests for Prospective, Injunctive, and Declaratory Relief are Now Moot.</u>

At the outset, to the extent that the plaintiffs seek prospective, injunctive, or declaratory relief, the short answer to that request is that the plaintiffs have withdrawn from the union, are no longer subject to dues deductions, have received dues refunds, and, in light of the Supreme Court's decision in <u>Janus</u>, are no longer subject to the threat of future dues deductions since the Court has struck down these type of "agency shop" arrangements in which dissenting workers were nonetheless

14

required to pay union dues. Given that this practice is no longer in effect and cannot be constitutionally reinstituted in light of the Court's decision in Janus, we agree with those courts who have considered prospective, injunctive, and declaratory relief requests like those made here and found those requests to be moot.

The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). There is a constitutional dimension to the mootness doctrine.

> Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L.Ed.2d 400 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (citing Allen v. Wright, 468 U.S. 737, 750–751, 104 S. Ct. 3315, 82 L.Ed.2d 556 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471–473, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L.Ed. 617 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477–478. "This means that, throughout the litigation, the plaintiff 'must have suffered,

or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " <u>Spencer</u>, 523 U.S. at 7 (quoting <u>Lewis</u>, 494 U.S. at 477).

<u>Burkey v. Marberry</u>, 556 F.3d 142, 147 (3d Cir. 2009) (dismissing habeas petition as moot).

In considering the application of the mootness doctrine to this case, we most assuredly do not write upon a blank slate. Quite the contrary, in the wake of <u>Janus</u>' sea change in this law regarding the constitutionality of "agency shop" statutes, numerous courts have been confronted with the precise scenario presented here: A <u>Janus</u>-based lawsuit by an employee who was formerly subjected to compulsory dues deductions, seeking injunctive relief against officials who had abandoned this "agency shop" practice in light of the Supreme Court's ruling. Almost without exception, on these facts, courts have concluded that plaintiffs' requests for prospective relief are now moot given the cessation of this practice that was compelled by the Supreme Court's decision in <u>Janus</u>.[2]

---

[2] <u>See, e.g.</u>, <u>Oliver v. Serv. Employees Int'l Union Local 668</u>, No. CV 19-891, 2019 WL 5964778, at *7 (E.D. Pa. Nov. 12, 2019); <u>LaSpina v. SEIU Pennsylvania State Council</u>, No. CV 3:18-2018, 2019 WL 4750423, at *9 (M.D. Pa. Sept. 30, 2019); <u>Mayer v. Wallingford-Swarthmore Sch. Dist.</u>, No. CV 18-4146, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019); <u>Diamond v. Pennsylvania State Educ. Ass'n</u>, 399 F. Supp. 3d 361, 383 (W.D. Pa. July 8, 2019) (citing <u>Hartnett v. Pa. State Educ. Ass'n</u>, 390 F. Supp. 3d 592 (M.D. Pa. May 17, 2019) (finding comparable claims for declaratory and injunctive relief moot post-<u>Janus</u> because the "[p]laintiffs face no realistic possibility that they will be subject to the unlawful

For their part, the plaintiffs attempt to resist this rising tide of case law by arguing the voluntary cessation doctrine, which holds that voluntary abandonment of an unlawful practice does not automatically render a dispute moot. The difficulty with this assertion in the instant case is twofold: First, virtually every court which has considered this argument following the Supreme Court's decision in <u>Janus</u> has rejected it.[3] Second, this argument fails to take into account the unique factual

---

collection of 'fair share' fees")); <u>Cook v. Brown</u>, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019) (finding a request for injunctive relief post-<u>Janus</u> moot because the union had already stopped collecting fair-share fees and thus there was "no live controversy . . . necessitating injunctive relief"); <u>Lamberty v. Conn. State Police Union</u>, No. 3:15-cv-378, 2018 WL 5115559, at *9 (D. Conn. Oct. 19, 2018) (explaining that <u>Janus</u> mooted a challenge to the constitutionality of agency fees because "there is nothing for [the court] to order [the d]efendants to do now"); <u>Yohn v. Cal. Teachers Ass'n</u>, Case No. SACV 17-202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) (granting the union's motion to dismiss on mootness grounds after the union complied with <u>Janus</u>); <u>Danielson v. Inslee</u>, 345 F. Supp. 3d 1336, 1339-40 (W.D. Wash. 2018) (finding that <u>Janus</u> mooted a controversy when the State of Washington stopped collecting agency fees post-<u>Janus</u>); <u>Smith v. Bieker</u>, Case No. 18-cv-05472-VC, 2019 WL 2476679, at *1 (N.D. Cal. June 13, 2019) (finding similar claims moot because the State did not plan to enforce the unconstitutional statute in light of <u>Janus</u>). <u>See also</u> <u>Mayer v. Wallingford-Swarthmore Sch. Dist.</u>, No. CV 18-4146, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019); <u>Molina v. Pennsylvania Soc. Serv. Union</u>, 392 F. Supp. 3d 469, 471 (M.D. Pa. 2019); <u>Hamidi v. Serv. Employees Int'l Union Local 1000</u>, 386 F. Supp. 3d 1289, 1295 (E.D. Cal. 2019); <u>Akers v. Maryland State Educ. Ass'n</u>, 376 F. Supp. 3d 563, 572 (D. Md. 2019); <u>Lee v. Ohio Educ. Ass'n</u>, 366 F. Supp. 3d 980 (N.D. Ohio 2019).

[3] <u>See</u> cases cited in footnote 3 <u>supra</u>.

context of this case. This is not a situation in which the voluntary cessation doctrine applies because a litigant has made a brief and temporary tactical legal retreat on an uncertain legal landscape. Quite the contrary, the United States Supreme Court has now clearly and definitively changed that legal landscape and the actions of the defendants simply reflect compliance with the Court's unmistakable mandate. As one court has aptly observed when discounting a similar voluntary cessation argument:

> Janus . . . represents a significant legal shift because it explicitly overruled Abood and held that the collection of fair-share fees was unconstitutional. "The law of the land thus has changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees." Complying with a Supreme Court decision [therefore] cannot be considered "voluntary cessation."

Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 387 (W.D. Pa. 2019) (citations omitted).

We agree. Finding that this paradigm shift in the law, and the parties' compliance with their newly defined legal obligations eliminates the need for prospective relief, and further concluding that complying with a Supreme Court decision cannot be characterized as voluntary cessation, we submit that these requests for prospective relief from the defendants are now moot and should be dismissed.

### C. **The Plaintiffs' Count I Damages Claims Also Fail as a Matter of Law.**

As we construe the plaintiffs' complaint, the plaintiffs also seek damages from the defendants as a result of these alleged Constitutional infractions. However, in our view, on the unique facts of this case, the plaintiffs' Count I claims for damages fail. As we have noted, Count I brings constitutional free speech claims based upon the Supreme Court's decision in Janus, alleging that the conduct of union officials and the county defendants violated their constitutional rights under the First and Fourteenth Amendments through compulsory dues payments. (Doc. 1 ¶¶ 36-51).

There are two profound problems with these damages claims. First, they ignore the legal and factual backdrop of this case. Prior to June of 2018, the practice engaged in by the county and the union of seeking dues deductions from these employees was commonplace, expressly authorized by statute, and constitutionally endorsed by the United States Supreme Court. Abood v. Detroit Bd. of Ed., 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977). Thus, prior to the fundamental sea change in the law resulting from the ruling in Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448, 2459-60, 201 L. Ed. 2d 924 (2018), the defendants had no reason the question the lawfulness of their conduct. Moreover, once the legal paradigm shifted in this profound way, within a matter of months the defendants had accepted the plaintiffs' resignations from the union, halted their dues

19

deductions, and repaid the dues that had been deducted while the resignations requests were pending, with interest.

These damages claims also fail to acknowledge an immutable legal fact, the existence of a good faith defense when parties act in reliance upon what was then-existing law. On this score, we note that: "every federal appellate court to have decided the question has held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO, 942 F.3d 352, 362 (7th Cir. 2019) citing Clement v. City of Glendale, 518 F.3d 1090, 1096–97 (9th Cir. 2008); Pinsky v. Duncan, 79 F.3d 306, 311–12 (2d Cir. 1996); Vector Research, Inc. v. Howard & Howard Attorneys P.C., 76 F.3d 692, 698–99 (6th Cir. 1996); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1275–78 (3d Cir. 1994); Wyatt v. Cole, 994 F.2d 1113, 1118–21 (5th Cir. 1993) ("Wyatt II"). As the United States Court of Appeals for the Third Circuit has observed when considering this issue in the context of § 1983 civil rights litigation: "we believe in accord with the [other] court of appeals . . . that a good faith defense is available[.]" Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1277 (3d Cir. 1994).

In the instant case, these legal tenets combine to defeat the damages claim set forth in Count I of the plaintiffs' complaint and the First Amendment claims

grounded directly upon the <u>Janus</u> decision. Here, the dues deductions that were undertaken by the defendants were plainly done in good faith, in reliance on a state statute which expressly authorized this practice and in accordance with the then existing Supreme Court precedent which constitutionally endorsed such union dues deductions. Furthermore, when the Supreme Court's <u>Janus</u> decision fundamentally altered this legal landscape, the defendants then halted the dues deductions for those employees who chose to withdraw from the union and refunded dues paid while their resignation requests were pending, with interest. On these facts, we conclude that it is evident that a defense of good faith reliance upon then existing law applies here and bars these § 1983 damages claims.

We are not alone in reaching this conclusion. Quite the contrary, on remand from the Supreme Court, the court of appeals in <u>Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO</u>, 942 F.3d 352, 364 (7th Cir. 2019) found that the union was entitled to a good faith defense to liability for damages based upon its reliance on what was previously settled law. In reaching this result, the court of appeals observed that there is an emerging legal consensus on this question, stating that "every district court that has considered the precise question before us— whether there is a good-faith defense to liability for payments collected before <u>Janus II</u>—has answered it in the affirmative." <u>Id.</u> (citing <u>Hamidi v. SEIU Local 1000</u>, 2019 WL 5536324 (E.D. Cal. Oct. 25, 2019)); <u>LaSpina v. SEIU Pennsylvania State</u>

Council, 2019 WL 4750423 (M.D. Pa. Sept. 30, 2019); Casanova v. International Ass'n of Machinists, Local 701, No. 1:19-cv-00428, Dkt. #22 (N.D. Ill. Sept. 11, 2019); Allen v. Santa Clara Cty. Correctional Peace Officers Ass'n, 400 F. Supp. 3d 998, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019); Ogle v. Ohio Civil Serv. Emp. Ass'n, 397 F. Supp. 3d 1076 (S.D. Ohio 2019), appeal pending, No. 19-3701 (6th Cir.); Diamond v. Pennsylvania State Educ. Ass'n, 399 F. Supp. 3d 361, 2019 WL 2929875 (W.D. Pa. July 8, 2019), appeal pending, No. 19-2812 (3d Cir.); Hernandez v. AFSCME California, 386 F. Supp. 3d 1300 (E.D. Cal. 2019); Doughty v. State Employee's Ass'n, No. 1:19-cv-00053-PB (D.N.H. May 30, 2019), appeal pending, No. 19-1636 (1st Cir.); Babb v. California Teachers Ass'n, 378 F. Supp. 3d 857 (C.D. Cal. 2019); Wholean v. CSEA SEIU Local 2001, 2019 WL 1873021 (D. Conn. Apr. 26, 2019), appeal pending, No. 19-1563 (2d Cir.); Akers v. Maryland Educ. Ass'n, 376 F. Supp. 3d 563 (D. Md. 2019), appeal pending, No. 19-1524 (4th Cir.); Bermudez v. SEIU Local 521, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); Lee v. Ohio Educ. Ass'n, 366 F. Supp. 3d 980 (N.D. Ohio 2019), appeal pending, No. 19-3250 (6th Cir.); Hough v. SEIU Local 521, 2019 WL 1274528 (N.D. Cal. Mar. 20, 2019), amended, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019), appeal pending, No. 19-15792 (9th Cir.); Crockett v. NEA-Alaska, 367 F. Supp. 3d 996 (D. Alaska 2019), appeal pending, No. 19-35299 (9th Cir.); Carey v. Inslee, 364 F. Supp. 3d 1220 (W.D. Wash. 2019), appeal pending, No. 19-35290 (9th Cir.); Cook v. Brown, 364

F. Supp. 3d 1184 (D. Or. 2019), appeal pending, No. 19-35191 (9th Cir.); Danielson

v. AFSCME, Council 28, 340 F. Supp. 3d 1083 (W.D. Wash. 2018), appeal pending,

No. 18-36087 (9th Cir.); see also Mooney v. Illinois Educ. Ass'n, 942 F.3d 368, 369

(7th Cir. 2019).

Given the uncontested evidence revealing that the defendants conducted these

dues deductions in accordance with then-existing law, and then conformed their

conduct to the altered legal terrain following the Supreme Court's decision in Janus,

it is submitted that this court should follow the growing legal consensus finding that

the good faith defense applies in this setting and precludes claims for damages on

these unique facts. Accordingly, these damages claims should be dismissed.

### D. **Count II of the Plaintiffs' Complaint Fails to State a Claim.**

Finally, in Count II of their complaint, the plaintiffs bring a separate First

Amendment freedom of association and freedom of speech claim, asserting that the

designation of the local union as the exclusive bargaining representative

unconstitutionally abridged the plaintiffs' free speech and association rights by in

some way compelling them to associate with the union on collective bargaining

matters. (Doc. 1 ¶¶ 52-65).

As noted by the defense, the difficulty with this particular claim is that in

Minnesota State Bd. for Cmty. Colleges v. Knight, 465 U.S. 271, 291, 104 S. Ct.

1058, 1069, 79 L. Ed. 2d 299 (1984), the United States Supreme Court rejected First

Amendment and Equal Protection challenges to similar exclusive representation laws in the public employment context holding that such laws do not violate First Amendment associational principles and finding that: "The state has a legitimate interest in ensuring that its public employers hear one, and only one, voice presenting the majority view of its professional employees on employment-related policy questions, whatever other advice they may receive on those questions." Id.

Given what we construe as the Supreme Court's longstanding teaching in Knight, the plaintiffs' First Amendment associational claims challenging the union's role as the exclusive labor representative of these public employees would fail unless the Court's recent decision in Janus has somehow abrogated its holding in Knight. Viewed in isolation, this is a difficult argument to sustain. The Supreme Court's decision in Janus clearly shows that the Court understood its ability to expressly overrule prior precedent since that is precisely what the Court did when it set aside its prior decision in Abood. It seems unlikely that the Court, having expressly overruled its prior decision in Abood, would have been reticent to expressly address its holding in Knight, if that had been the Court's intent. Moreover, while the Court's decision in Janus recognized First Amendment tensions that may arise due to the activities of public employee unions, in the final analysis the Court did not to make any sweeping declaration striking down these exclusive bargaining agent arrangements. Quite the contrary, the Court eschewed any such broad declarations,

24

stating instead that: "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448, 2485, n. 27, 201 L. Ed. 2d 924 (2018). Since exclusive bargaining representative status is a settled feature of state labor-relations systems, the Court's assertion that "States can keep their labor-relations systems exactly as they are", simply cannot be read as a constitutional rebuke of this practice.

And, in fact, those courts which have considered this issue generally agree that the Court's decision in Janus does not abrogate or undermine its prior holding in Knight. Mentele v. Inslee, 916 F.3d 783, 790 (9th Cir.), cert. denied sub nom. Miller v. Inslee, 140 S. Ct. 114 (2019). As one court has recently observed:

> Read properly, Janus reaffirms rather than undermines Knight. Although Janus contains a brief passage stating that exclusive representation is "a significant impingement on associational freedoms that would not be tolerated in other contexts," earlier in that same sentence the Court held "[i]t is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees." Janus, 138 S. Ct. at 2478. Furthermore, Janus emphasizes elsewhere that "States can keep their labor-relation systems exactly as they are" and makes no reference to Knight in the opinion. Id. at 2485 n.27. In that regard, if Knight were overruled, public employers would lack a readily identifiable, authorized representative with whom to negotiate, and the practical challenges for public employers in managing their workforce would be daunting.
>
> The Third Circuit has not yet addressed the issue, but the Eighth and Ninth Circuits have held that the Supreme Court sanctioned the practice of exclusive representation in public sector collective bargaining in Knight and agree that Janus cannot be read to have overruled it.

25

Bierman v. Dayton, 900 F.3d 570, 574 (8th Cir. 2018) (noting that "the constitutionality of exclusive representation standing alone was not at issue" in Janus); Mentele v. Inslee, 916 F.3d 783, 789 (9th Cir. 2019) ("Janus's reference to infringement caused by exclusive union representation . . . is not an indication that the Court intended to revise the analytical underpinnings of Knight or otherwise reset the longstanding rules governing the permissibility of mandatory exclusive representation.").

Oliver v. Serv. Employees Int'l Union Local 668, No. CV 19-891, 2019 WL 5963226, at *5 (E.D. Pa. Nov. 12, 2019). This conclusion is echoed in an emerging body of case law, which consistently declines invitations to set aside public employee unions' exclusive representation status based upon an expansive reading of Janus.[4] We find the rationale of these cases compelling and persuasive. Accordingly, given the current state of the law, the plaintiffs' Count II claims, which entail a broadly framed First Amendment attack upon exclusive public union representation of workers, fails, and this claim should be dismissed.[5]

---

[4] See e.g., Sweet v. California Ass'n of Psychiatric Technicians, No. 2:19-CV-00349-JAM-AC, 2019 WL 4054105, at *3 (E.D. Cal. Aug. 28, 2019); Grossman v. Hawaii Gov't Employees Ass'n/AFSCME Local 152, 382 F. Supp. 3d 1088 (D. Haw. 2019); Thompson v. Marietta Educ. Ass'n, 371 F. Supp. 3d 431 (S.D. Ohio 2019); Reisman v. Associated Faculties of Univ. of Maine, 356 F. Supp. 3d 173, 178 (D. Me. 2018), aff'd, 939 F.3d 409 (1st Cir. 2019); Uradnik v. Inter Faculty Org., No. CV 18-1895 (PAM/LIB), 2018 WL 4654751, at *2 (D. Minn. Sept. 27, 2018).

[5] We note that Count II of this complaint may also tangentially implicate defendants beyond the union and the county, since the members of the Pennsylvania Labor Relations Board, (PLRB),who are also named as defendants in this lawsuit, are alleged to have certified the local as the exclusive representative of

Finally, having found that the plaintiffs' claims fail as a matter of law, it follows that the plaintiffs' motion for summary judgment, (Doc. 43), also fails and should be denied.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions to dismiss which have been deemed motions for summary judgment, (Doc. 25 and 27), be GRANTED and the plaintiffs' motion for summary judgment, (Doc. 43) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge,

---

the bargaining unit in this case. We have already issued a Report and Recommendation recommending the dismissal of these state agency defendants. (Doc. 55.) However, to the extent that the plaintiffs believe that this exclusive bargaining agent certification by the PLRB provides independent grounds for a cause of action against these state officials, we believe that the foregoing analysis refutes such a claim and would also compel dismissal of these state agency officials.

however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of December 2019.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge